**Richard N. BERRY, Sr.**

v.

**MAINE PUBLIC UTILITIES COMMISSION.**

Supreme Judicial Court of Maine.

Nov. 30, 1978.

Preti, Flaherty & Beliveau by Annee Tara (orally), Severin M. Beliveau, Augusta, for plaintiff.

Horace Libby (orally), Frederick S. Samp, Public Utilities Commission, Augusta, for defendant.

Before POMEROY, WERNICK, DELA-HANTY, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

It is now clear to all who have an awareness of how our State government operates that the Public Utilities Commission performs a most important function in carrying out the task our Legislature has seen fit to assign to it. Because of its importance, its activities are properly subject to close and critical study by this Court when issues arising from its activities are properly presented to us.

Before us for decision is an appeal taken pursuant to 35 M.R.S.A. § 303 from a deci-

sion of the Commission and a complaint filed pursuant to 35 M.R.S.A. § 305 arising from the same proceeding.

We sustain the appeal and vacate the Commission's order.

We dismiss the Section 305 complaint as it has become moot by reason of the action we take in the Section 303 appeal.

This case arises from a decision of the Public Utilities Commission ( # U–3139, August 6, 1976).

Appellant, President of five small Maine utility companies, came under investigation by the P.U.C. in accordance with 35 M.R.S.A. § 296 [1] in May of 1975. At issue were various expenses paid him by the companies as operating expenses during the period 1970 through 1975. Hearings were held on December 30, 1975 and January 16, 1976. The Commission found violations of 35 M.R.S.A. §§ 53, 55 and 104(3).

Ten expense vouchers reimbursing appellant Berry by one of his utilities—totaling some $600—were found to be in violation of §§ 53 and 55.[2] These vouchers reimbursed appellant for political contributions and purchases of meals, recreation and travel expense for himself and others. Appellant's personal use of an Augusta apartment rented by two of the companies, of which he is President, for which reimbursement by him was frequently in arrears, was found to be an extension of credit in violation of 35 M.R.S.A. § 104.[3] This section required contracts or "*arrangements*" between a public utility and persons controlling more than 25% of its voting capital stock to be approved in advance by the Commission.

The Commission issued a decree, based on these findings, on August 6, 1976. That decree ordered that: (1) the Legal Division consult with the Attorney General concerning possible civil penalties and contempt charges stemming from the violations found; (2) total salary and expenses to be paid to plaintiff by his utilities not exceed $16,500 unless and until changes in circumstances warranted adjustment; (3) in future rate cases involving any utility controlled by appellant, the normal presumption in favor of management's experience and judgment not apply in any issue concerning the reasonableness of any management expense; and (4) no utility controlled by appellant make or reimburse any further rental payments on any apartment without the Commission's permission.

Appellant presents four arguments in his attack on the order's validity: First, that the Commission exceeded its authority and acted without due process in instigating the investigation and hearings; second, that the Commission erred in refusing to admit evidence of other vouchers offered by appellant; third, that the investigation should have been confined by the statute of limitations to matters occurring after December 18, 1973, and finally, that the sanctions imposed are beyond the authority of the Commission.

Inasmuch as we find that the Commission exceeded its authority in its conduct of the hearing, and violated governing rules of evidence, we need not discuss other proffered arguments.

The Commission's power to conduct investigations under § 296 is a broad one, extending to "*any matter relating to*

---

1. Section 296 provides in part:
   *Whenever the commission believes that . . . an investigation of any matter relating to any public utility should for any reason be made, it may, on its own motion, summarily investigate the same with or without notice.*

2. Section 53 provides in part:
   *Every public utility shall keep and render to the commission in the manner and form prescribed by the commission, uniform accounts of all business transacted.*

Section 55 provides in part:
   *The Commission shall prescribe the forms of all books, accounts, papers and records required to be kept, and every public utility is required to keep and render its books, accounts, papers and records accurately and faithfully in the manner and form prescribed by the commission and to comply with all directions of the commission relating to such books, accounts, papers and records.*

3. Section 104 has since been amended; P.L. 1977, c. 426, § 1.

*any public utility,"* and such investigation may be made *"summarily".* However, when the investigatory phase advances to the point where a *"formal public hearing"* is warranted, respect must be shown for the rights of persons who are the subject of that investigation. When a hearing is to be had, 35 M.R.S.A. § 297 provides that

> *Notice . . . shall be given . . . as provided in section 293; and thereafter proceedings shall be had and conducted . . . as though complaint had been filed with the commission . . . .*

In turn, § 293 provides that *"[b]oth the public utility and the complainants shall be entitled to be heard and have process to enforce the attendance of witnesses as in civil actions in the Superior Court."* Similarly, evidentiary rules controlling in the Superior Court apply in such hearings, 35 M.R.S.A. § 308. *See also,* relevant portions of the Maine Administrative Procedure Act, 5 M.R.S.A. §§ 9056, 9057 (Supp.1978).

Appellee insists, in its discussion of the statute of limitations issue, that a § 296 investigation is *sui generis,* virtually unconfined in scope as to topics or time of the occurrence. Simultaneously, it admits in its brief that the investigation *"did not, nor could [not], impose[ ] civil or criminal penalties."* Nevertheless it announced in its Order a desire to see such sanctions exacted *"to the extent permitted by law."*

The Commission's insistence that, in effect, its investigation carries no threat to appellant is unconvincing, and is rebutted by the disabilities attempted to be imposed by its own decree. When personal liberty and property interests are involved the Commission must comply with recognized standards of due process and fundamental fairness.

This was not done.

■ The Notice of Investigation—vague in itself—did not sufficiently apprise Berry of matters about which he should have been prepared.[4] Appellant was required to explain expenses dating back five years, a time the Commission's counsel admitted had been arbitrarily selected. Berry was denied an opportunity to present and develop his case when the Commission decided it had *"heard enough"* and intended to close the hearing at 5:30 that afternoon.[5] Other improprieties appear: there is some evidence in the record of *ex parte* communications between one commissioner and a staff attorney inconsistent with their respective roles as judge and advocate,[6] and the manner in which press releases announcing the hearings were issued, of which Berry now so bitterly complains, created unnecessary controversy and was at best indiscreet.[7]

---

4. The Notice referred specifically to *"certain grocery, lodging, political, travel, recreational and other expenses accumulated by Richard N. Berry, Sr., President of [the five companies]",* but cited no statutory or regulatory objective in conducting the hearing. In any event, issues concerning appellant's salary and legislative lobbying activities, not cited in the Notice, were injected into the hearing without Berry having adequate opportunity to prepare for them. *See Mechanic Falls Water Co. v. Public Utilities Commission,* Me., 381 A.2d 1080 (1977):

> The outer limits of the due process clause in a public utility rate proceeding we need not here decide for it undoubtedly includes notice to the utility sufficient to enable it to present evidence on any issue relevant to that proceeding. 381 A.2d at 1103.

5. The transcript records the following remarks:
*COMMISSIONER [       ]—I want to be clear on one thing about that 5:30. When we conclude the hearing we're also concluding—this proceeding. We're not coming back, so that*

as far as Mr. Berry's chance is concerned, it's over with at 5:30.
*CHAIRMAN [       ]— . . . I think now we will close it and I think the Commission has heard enough so that I think we can render a fair decision.*

In the New England Divisions, Case, *Akron, C. & Y. R. Co. v. United States,* 261 U.S. 184, 200, 43 S.Ct. 270, 277, 67 L.Ed. 605 (1923), Mr. Justice Brandeis defined a full hearing as

> . . . one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety, from the standpoint of justice and law, of the step asked to be taken.

6. *See* 5 M.R.S.A. §§ 9055(1) and (2). *See also, Mechanic Falls Water Co. v. Public Utilities Commission, supra* at 1105.

7. *See* dissenting opinion of Smith, Commissioner (P.U.C. order # U–3139, August 6, 1976).

The basis of the Commission's concern with, and jurisdiction over the improprieties disclosed by its investigation is its function as a rate-setting body. The accounting violations found amounted to less than $600 of a total of some $86,000 in expenses. The proven violations consist primarily of the allocation of expenses to improper accounts, not the claiming of the expenses *per se*.[8] Evidence that less than one percent of claimed expenses were improper[9] is both relevant and highly probative on the issues of proper management of the utilities and the effect of such violations on the rate structure. To exclude such evidence violates both evidentiary rules[10] and fundamental due process.

The merits of the respective arguments need not be discussed, except to say that the highly personal infirmities placed upon appellant by the Commission's order appear impermissible. Assuming, *arguendo*, they are within the Commission's power, there is no evidentiary basis in the record for the sanctions. The Commission's intrusion into areas largely reserved for independent business judgment, such as the establishment of salaries[11] and the comparative economy of motel versus apartment accommodations, based solely on notions of what is in a commissioner's opinion, *"just and reasonable"*[12] cannot be approved.[13]

Therefore, the entry must be, and is:

Appeal sustained.

The Order of the Public Utilities Commission in U. 3139 is vacated.

McKUSICK, C. J., did not sit.

ARCHIBALD, J., did not sit.

---

8. See Commissioner Smith's dissenting opinion, expressing concern that part of the decree *"attempts to superimpose a phantom code of ethics"* upon appellant. Order # U–3139 P. 16–17.

9. Some, according to the dissenting opinion, apparently *"more erroneous than illegal."* *Id.* p. 17.

10. *Maine Rules of Evidence*, Rules 401, 402.

11. *See,* in this regard, 35 M.R.S.A. § 51, *Central Maine Power Co. v. Public Utilities Commission,* (1958) 153 Me. 228, 136 A.2d 726.

12. Order, p. 15, ¶ 2.

13. *Cf., Casco Bay Lines v. Public Utilities Commission,* Me., 390 A.2d 483, 493 (1978):
Although the utility bears the burden of establishing the reasonableness of claimed expenses, a finding of unreasonableness cannot be made on the basis of such a bare record as was made here.