1998 ME 271

Gregory MARTIN

v.

UNEMPLOYMENT INSURANCE
COMMISSION.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 20, 1998.
Decided Dec. 18, 1998.

Gregory A. Martin, South China, for plaintiff.

Andrew Ketterer, Attorney General, Elizabeth J. Wyman, Asst. Atty. Gen., Margaret P. Moss, Asst. Atty. Gen., Augusta, for appellee.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Gregory Martin appeals from a decision of the Superior Court (Kennebec County, *Marden, J.*) affirming a decision of the Unemployment Insurance Commission in which the Commission declined to relieve Martin of his status as an employer. We affirm the judgment of the Superior Court.

## I. Background

[¶ 2] Greg's Place is a small family restaurant located in South China, Maine, owned and operated by Gregory Martin.[1] In 1985, a waitress who had worked at the restaurant filed a claim for unemployment benefits.[2] At that time, Greg's Place was not covered by unemployment insurance. The Director of Unemployment Compensation investigated the claim and determined that Greg's Place was an "employer" subject to the provisions of the Employment Security Law. Greg's Place was therefore required to carry unemployment insurance. Martin did not appeal that decision.

[¶ 3] In the following years, Martin made contributions from Greg's Place to the Unemployment Compensation Fund and filed quarterly reports with the Commission. Each quarterly report asked employers to provide, among other things, employees' names and social security numbers, and the amount of wages each employee was paid. On each quarterly report Martin reported that Greg's Place had "no employees" and "no payroll," and provided only the "estimated tips" received by its waitresses. He also refused to include the waitresses' social security numbers.

[¶ 4] In 1995, the Unemployment Compensation Division, for the first time, assessed a penalty of $25 against Martin for failing to report the social security numbers of his waitresses, and Martin appealed this decision to the Unemployment Insurance Commission. He then initiated this separate action, requesting that the "employer" status of the restaurant be terminated under the Employment Security Law, pursuant to 26 M.R.S.A. § 1222(2)(C). The Commissioner of the Department of Labor denied this request, and Martin appealed the denial to the Unemployment Insurance Commission.

[¶ 5] A hearing was scheduled for the appeal from the Commissioner's denial of Martin's request to terminate the "employer" status of Greg's Place. Martin and his father George attempted to record the proceedings with their own audio and video equipment.[3]

---

1. Greg's Place is apparently not incorporated and has been intermittently referred to in the record as a d/b/a ("doing business as") for Gregory Martin.

2. Greg's Place was involved in two separate proceedings before the Unemployment Insurance Commission, but has appealed only from the decision in one of those proceedings. Nonetheless, the "record" submitted by the agency contains the transcripts, correspondence, and other documents filed in both proceedings. Martin made a timely objection to the contents of the record that was submitted, and we limit our review to those facts contained in the record of the matter that is presently before us.

3. The Commission had already heard Martin's appeal of the $25 penalty. At that hearing, Gregory and George Martin attempted to record the proceedings with their own audio and video equipment, citing section 404 of the Freedom of Access Act as giving them the authority to do so. The Commission declined to allow Martin to

They refused to turn the equipment off after being asked to do so by the Commissioners, and as a result, the Commission terminated the hearing and no evidence was entered. The Commission subsequently issued a decision in which it affirmed the decision to maintain "employer" status for Greg's Place, and held that it had properly exercised its authority to terminate the hearing. Martin requested reconsideration of that decision, and the Commission denied that request in a written decision.

■ [¶ 6] Martin then filed a petition for review of final agency action in Kennebec County Superior Court pursuant to M.R. Civ. P. 80C and followed the appeal with multiple motions, including a motion for summary judgment, while the 80C appeal was pending. Ultimately, the Superior Court affirmed the Commission's decision and Martin filed this appeal.[4]

[¶ 7] Although Martin sets out thirty-four issues in his brief, most of those issues are without merit, and we therefore address only his claims that: (1) the Superior Court erred in declining to act on his motions for summary judgment filed during the pendency of the 80C appeal; (2) the Commission violated his rights by refusing to allow the private recording of a hearing before the Commission, and by terminating the hearing after Martin refused to turn his recording equip-

ment off; and (3) Greg's Place is not an "employer" required by law to carry unemployment insurance.

## II. Discussion

### A. The Motion for Summary Judgment.

■ [¶ 8] We first address Martin's confusion regarding the availability of summary judgment relief in the context of his 80C appeal.[5] Initially, it is clear from the record that the matter was before the court only on the appeal pursuant to 5 M.R.S.A. § 11001 and M.R. Civ. P. 80C, and that all of the facts necessary to the resolution of the appeal were contained in the record of the administrative proceedings. Martin does not assert that any factual information outside of the record was necessary to a determination of the issues on appeal.[6]

■ [¶ 9] Generally, "a motion for summary judgment is inappropriate in an appeal on questions of law only" from administrative agencies. *Grace v. Maine Employment Security Comm'n*, 398 A.2d 1233, 1234 n. 1 (Me.1979)(citing *Garon v. Glazer*, 267 A.2d 381 (Me.1970)). Indeed, a motion for summary judgment is an inappropriate vehicle for judicial action in any matter presented to the court solely in its capacity as an appellate tribunal, where the court has no independent factfinding authority.[7] An appellate court

---

record the hearing, on the grounds that "the hearing was not a public proceeding within the meaning of § 404." After Martin turned off the equipment, the hearing proceeded. The Commission later issued a decision affirming the assessment of the $25 penalty, and rejecting the argument put forth by Greg's Place that its waitresses were not employees. That decision was not appealed.

4. Although the Commission argues that Martin's appeal was not timely filed, Martin filed his notice of appeal within the required thirty days of the Superior Court's order denying Martin's motion for "relief from judgment or order." This motion was in essence a motion to alter or amend the judgment, *see* M.R. Civ. P. 59(e), which, pursuant to M.R. Civ. P. 73(a), tolls the thirty-day period in which a party is entitled to appeal a judgment.

5. Martin's motion for summary judgment was entered on the docket on February 24, 1997. The Commission did not file a "motion in opposition to summary judgment" until thirty-two days later, eight days after Martin filed a "motion for

final summary judgment." Martin argues that because the Commission failed to file a timely response to the motion, he was entitled to a judgment as a matter of law. Because the court, by law, could not have considered the motion for summary judgment, this argument is without merit.

6. Except in limited circumstances, judicial review of an agency decision "shall be confined to the record upon which the agency decision was based." 5 M.R.S.A. § 11006(1) (1989). In this matter, no motion to take additional facts was made. *See* 5 M.R.S.A. § 11006(1)(A), (B) (1989); M.R. Civ. P. 80C(e). Nor would such a motion have been granted.

7. A court functioning in its capacity as a court of appeals may, in some specific cases, have the authority to find facts. *See, e.g.*, 36 M.R.S.A. § 151 (Supp.1998) (stating that Superior Court reviewing the decision of the State Tax Assessor "shall make its own determination as to all questions of fact or law"); *Jackson Advertising Corp. v. State Tax Assessor*, 551 A.2d 1365, 1366 (Me.

reviews the factual findings and decisions of law of another tribunal. The appropriate mechanism for bringing asserted errors of that tribunal to the attention of the appellate court is through briefing of the appeal. *See* 5 M.R.S.A. § 11007(2)–(4) (1989); M.R. Civ. P. 80C(f), (g).

[¶ 10] In contrast, a motion for summary judgment is designed to provide a court that is determining the facts in the first instance with a procedure for applying the law to material facts that are not in dispute. *See Cook v. Lisbon School Comm.*, 682 A.2d 672, 675 (Me.1996). As we held in *Garon*, a motion for summary judgment "has a limited purpose and is not needed or intended for use in the disposition of appeals" from other tribunals. 267 A.2d at 382. Martin was therefore not entitled to have the court consider his motion for summary judgment.

### B. The Commission's Authority to Prohibit the Use of Recording Equipment.

[¶ 11] Martin next challenges the Commission's authority to prohibit his use of audio and video recording equipment at the hearing on the petition to terminate his restaurant's status as an employer. He asserts that he had the right to make recordings of the proceedings before the Commissioners pursuant the Freedom of Access Act, 1 M.R.S.A. §§ 401–410 (1989 & Supp.1998), which provides that, "[e]xcept as otherwise provided by statute ... all public proceedings shall be open to the public." 1 M.R.S.A. § 403 (1989). Where the proceedings are open to the public, the Act provides that:

[A]ll persons shall be entitled to attend public proceedings and to make ... taped or filmed records of the proceedings ... provided the taping [or] filming does not interfere with the orderly conduct of proceedings. The body or agency holding the public proceedings may make reasonable

rules and regulations governing these activities, so long as these rules or regulations do not defeat the purpose of this subchapter.

1 M.R.S.A. § 404 (1989).

[¶ 12] The Commission responds that its hearings fall within a statutory exception to the provision that all proceedings are "open to the public." Specifically, it argues that the hearings are made confidential by section 1082 of the Employment Security Law.[8] 26 M.R.S.A. §§ 1041–1251 (1988 & Supp.1998). At all relevant times, section 1082 provided in pertinent part:

Information ... *obtained from any individual pursuant to the administration of [the Employment Security Law]* shall, except to the extent necessary for proper presentation of a claim, be held confidential and shall not be published or be open to public inspection ... in any manner revealing the individual's or employing unit's identity. ...

26 M.R.S.A. § 1082(7) (1988) (emphasis added) (amended without substantive change by P.L.1997, ch. 687, § 1 (effective June 30, 1998)). This provision explicitly makes confidential the identities of employing units and individuals who come before the Commission pursuant to Employment Security Law. It necessarily follows that a hearing before the Commission for the determination of whether an employing unit is an "employer" must be closed to the public, to protect against the disclosure of confidential identifying information. The Legislature's intention that the proceedings not be open to the public is highlighted by the contrasting language providing that the written decisions resulting from these hearings *are* to be made available to the public once the confidential information contained in the decision has been redacted.[9]

---

1988) (citing *Frank v. Assessors of Skowhegan*, 329 A.2d 167, 170 (Me.1974)) (discussing reviewing court's power to make a limited review of questions of fact in appeals from decisions of the State Tax Assessor). Those circumstances, however, are narrow and closely defined by statute. There is no authority for a court reviewing a decision of the Unemployment Insurance Commission to independently find the facts.

**8.** The Commission's interpretation of its enabling statute is accorded great deference. *See Daniels v. Tew Mac Aero Servs.*, 675 A.2d 984, 987 (Me. 1996).

**9.** "Final decisions of adjudicatory proceedings are available to the public provided that the names and addresses of claimants and employers are deleted from the decisions." 26 M.R.S.A. § 1082(7) (Supp.1998).

[¶ 13] Accordingly, pursuant to the Freedom of Access Act, the proceedings of the Commission are not "open to the public," *see* 1 M.R.S.A. § 403, and the parties may not make their own recordings of the proceedings.[10] The Commissioners acted within their authority in declining to allow Martin to videotape the proceeding.[11]

C. Entry of the Decision by Default.

[¶ 14] We next address Martin's assertion that the Commission denied his due process rights by ending the hearing and issuing a decision after the hearing was terminated. Although Martin presents the issue as one of due process, an analysis of his claim demonstrates that the real question presented is one of appropriateness of the sanction imposed by the Commission in response to Martin's disruptive conduct.

[¶ 15] The essential requirement of due process in the administrative context is that a party be given notice and an opportunity to be heard. *See Secure Envts. v. Norridgewock*, 544 A.2d 319, 325 (Me.1988). The Commission is required to afford an employer appealing a decision by the Commissioner of the Department of Labor "a reasonable opportunity for a fair hearing," the conduct of which is governed by Subchapter IV of the Administrative Procedures Act (APA). 5 M.R.S.A. §§ 8001–12015 (1989 & Supp.1998). *See* 26 M.R.S.A. § 1226(1)(B) (1988). The APA requires that "[i]f a scheduled hearing is canceled or postponed to a later date, the agency shall provide timely notice to the [parties]," 5 M.R.S.A. § 9052(5) (1988), and that an agency may "[m]ake informal disposition of any adjudicatory pro-

ceeding by default, provided that notice has been given that failure to take required action may result in default, and further provided that any such default may be set aside by the agency for good cause shown." 5 M.R.S.A. § 9053(3) (1988). In addition, the APA states that "unless otherwise limited by the agency to prevent repetition or unreasonable delay in proceedings, every party shall have the right to present evidence and arguments on all issues." 5 M.R.S.A. § 9056(2) (1988).

[¶ 16] Here, Martin was afforded both notice and a meaningful opportunity to be heard. There is no dispute that he was notified of the date and time of the hearing, that he was able to attend the hearing at the date and time set, that he was given an opportunity to present evidence, and that the Commissioners convened the hearing and stood ready to take evidence from Martin and his witnesses. Nor is there any dispute that Martin had previously been made aware that the hearings were not open to the public. Thus, Martin was not deprived of his due process rights. *See Dineen v. Town of Kittery*, 639 A.2d 101, 102–03 (Me.1994) (holding that a party was not denied his right to due process when he did not take advantage of "ample opportunity to present his position to the Committee").

[¶ 17] The question then is whether the Commission acted within its discretion in ending the hearing and entering a decision when Martin failed to respond to the request that he cease videotaping. We conclude that it did. Martin was notified immediately by the Commission that he must turn off his

---

**10.** The Commission also argues that the hearing was an "executive session" under 1 M.R.S.A. § 405. This argument fails. The executive session exception was never intended to swallow an entire category of proceedings. Instead, the invocation of an executive session must be closely tailored to the protection of specific information. In addition, the Commission does not suggest that it made any attempt to comply with the procedures necessary to calling an executive session. "Executive sessions may be called only by a public, recorded vote of 3/5 of the members, present and voting, of such bodies or agencies." 1 M.R.S.A. § 405(3) (1989). Moreover, "[a] motion to go into executive session shall indicate the precise nature of the business of the executive

session," and "[n]o other matters may be considered in that particular executive session." 1 M.R.S.A. § 405(4)–(5) (1989). *See Vella v. Town of Camden*, 677 A.2d 1051, 1054–55 (Me.1996).

**11.** We note that the Commission had the obligation itself to "record all hearings in a form susceptible to transcription," to "transcribe the recording when necessary for the prosecution of an appeal," and to "make copies of the record, copies of recordings or transcriptions available to any person at actual cost." *See* 5 M.R.S.A. § 9059(2), (3) (1989). There was no dispute that the Commission maintained its own audiotape equipment and recorded all hearings.

recording equipment. He adamantly refused to do so. He offered no other alternatives to the Commission. He was made aware that the hearing would be terminated if he did not desist. Because Martin declared his intent to record regardless of the Commission's request that he not do so, the Commission did not abuse its discretion in ending the hearing.[12]

[¶ 18] The burden of proof in a proceeding to terminate employer status is on the petitioner. *See* 26 M.R.S.A. §§ 1222(2), 1226(1)(B) (1988). The petitioner here, by his own actions, failed to present any evidence from which the Commission could conclude that the employment status should be terminated. The Commission did not err in finding that Martin failed to meet his burden of proof.

[¶ 19] Martin also had the right, under rules promulgated by the Commission pursuant to its statutory authority, *see* 26 M.R.S.A. §§ 1082(1), 1226(1)(B) (1988 & Supp.1998), to request that the Commission reconsider its decision, and to show good cause why the decision should be set aside. See also 5 M.R.S.A. § 9053(3) (1988) (requiring agency to set aside default for good cause shown). Although Martin moved for reconsideration, he demonstrated a continued intent to record any hearing opportunity provided. The Commission did not err in concluding that Martin failed to show good cause why its decision should be set aside.

The entry is

Judgment affirmed.

---

**12.** This case is distinguishable from *Berry v. Maine Public Utilities Commission*, 394 A.2d 790 (Me.1978), where we found that a party to an administrative hearing "was denied an opportunity to present and develop his case when the [Public Utilities] Commission decided it had 'heard enough' and intended to close the hearing at 5:30 that afternoon." *Id.* at 793. Here, Martin had a full opportunity to present evidence but declined to do so through his own actions.