2001 ME 60

Leonard C. MADDOCKS

v.

**UNEMPLOYMENT INSURANCE COMMISSION.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 28, 2001.

Decided: April 17, 2001.

Leonard C. Maddocks, Ellsworth, for plaintiff.

G. Steven Rowe, Attorney General, Pamela W. Waite, Asst. Attorney General, Elizabeth Wyman, Asst. Attorney General, Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Leonard C. Maddocks appeals from a judgment entered in the Superior Court (Hancock County, *Mead, J.*) affirming the Maine Unemployment Insurance Commission's decision that the satellite installation services performed for Maddocks constituted employment. Specifically, Maddocks contends that the Commission violated his due process rights and that he was prejudiced by the Commission's reliance on inadmissible evidence. We affirm in part and vacate in part.

## BACKGROUND

[¶ 2] Maddocks engages individuals to install satellite systems. In 1995, the Bureau of Unemployment Compensation of the Maine Department of Labor determined that pursuant to 26 M.R.S.A. § 1043(11)(E) (1988), the satellite installer, Michael Walsh, was Maddocks's employee for unemployment compensation purposes. Maddocks appealed the determination, and after a hearing, the Commission concluded that Maddocks failed to establish that the services performed by Walsh were those of an independent contractor rather than an employee. The Superior Court affirmed, holding there was competent evidence to support the Commission's decision, and

Maddocks's due process rights were not violated. We likewise affirmed the Commission's decision. *Maddocks v. Maine Unemployment Ins. Comm'n*, No. 97–100 (Me. June 3, 1997) (mem.).

[¶ 3] In 1998 Maddocks was notified by the Bureau that as an employer, he was required to pay unemployment insurance contributions for all wages he had paid since becoming an employer. Maddocks was issued one assessment for 1994 and another assessment for 1995 through 1996. Maddocks appealed the assessments.[1]

[¶ 4] At the Commission hearing, the following people were present: Maddocks; three commissioners; and two representatives from the Bureau, Matthew Halloran and Lloyd Black. Maddocks and Halloran were sworn, but Black was not. The Commission indicated that Black was present as a nonparticipant, nonwitness. After a dispute concerning whether Maddocks had received certain materials, the hearing was continued.

[¶ 5] At the second hearing, the same people were present, with the addition of a legal secretary for the Bureau. The legal secretary was the only person who was sworn at the second hearing. One of the commissioners indicated that prior to the hearing, he had requested that either Black or Halloran discuss the Bureau's procedure for generating assessments. Maddocks said he wanted to question the person who prepared some of the documents offered by the Bureau, but the preparer was unavailable and had not been subpoenaed. Maddocks objected to the admission of the documents. He did not present evidence to establish that the assessments were incorrect, or that the individuals referred to in the documents were not his employees.

[¶ 6] The Commission admitted the Bureau's exhibits finding them "the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of

serious affairs," within the meaning of 5 M.R.S.A. § 9057(2) (1989). In response to Maddocks's objection, the Commission offered to hold another hearing at which Maddocks could cross-examine the author of the documents if Maddocks in good faith believed the documents were in error. Maddocks did not request a further hearing. The Commission concluded that the Bureau had established that services had been performed for remuneration and that Maddocks had not established that the individuals were not his employees pursuant to 26 M.R.S.A. § 1043(11)(E). On Maddocks's appeal, the Superior Court affirmed, concluding, *inter alia*, that Maddocks failed to establish that the individuals were not his employees or that his due process rights had been violated. This appeal followed.

## I. DUE PROCESS

[¶ 7] Maddocks complains that he was prevented from presenting evidence and that the Commission communicated *ex parte* with the Bureau. "The essential requirement of due process in the administrative context is that a party be given notice and an opportunity to be heard." *Martin v. Unemployment Ins. Comm'n*, 1998 ME 271, ¶ 15, 723 A.2d 412, 417. The Commission was required to afford Maddocks "a reasonable opportunity for a fair hearing, the conduct of which is governed by Subchapter IV of the Administrative Procedures Act (APA)." *Id.* (quotations and citations omitted). When "the Superior Court reviews a decision of the Commission as an intermediate appellate court, we review the Commission's decision directly" to determine if "the Commission correctly applied the law and whether its fact findings are supported by any competent evidence." *McPherson Timberlands, Inc. v. Unemployment Ins. Comm'n*, 1998 ME 177, ¶ 6, 714 A.2d 818, 820.

[¶ 8] First, the APA provides that "every party shall have the right to present

---

1. Maddocks's lawyer initially appealed the assessments, but Maddocks later wrote a letter

to the Commission indicating that he was proceeding pro se.

evidence and arguments on all issues . . . ." 5 M.R.S.A. § 9056(2) (1989). The record reflects that during the hearings, Maddocks was given an opportunity to present testimony and documents on all issues. Throughout both hearings, the commissioners requested that Maddocks produce evidence to support his position and indicated their willingness to listen to his testimony.

■ [¶ 9] Second, the APA provides that the members of the Commission are not permitted to communicate about "any issue of fact, law or procedure" with any party *ex parte*. 5 M.R.S.A. § 9055(1)(1989). Although the record indicates that one of the commissioners communicated *ex parte* with both Black and Halloran, Maddocks was informed of the communications and then failed to object during the hearing. Thus, Maddocks cannot raise the issue on appeal. *See New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries and Wildlife*, 550 A.2d 56, 58, 60 (Me.1988) (finding that issues, including those implicating constitutional questions, "not raised at the administrative level are deemed unpreserved for appellate review," and pro se litigants are not afforded special consideration); *MacCormick v. MacCormick*, 513 A.2d 266, 268 & n. 2 (Me.1986) (finding that if a party knows a judge had *ex parte* communications, the issue is waived if the party does not object before judgment is entered).

[¶ 10] Because Maddocks was given notice of the hearing, was given an opportunity to be heard, and failed to object to the *ex parte* communications during the hearing, Maddocks was afforded the essential requirements of due process. *See Martin*, 1998 ME 271, ¶¶ 15–16, 723 A.2d at 417.

## II. EVIDENCE

■ [¶ 11] Maddocks contends the Commission violated the APA evidentiary rules by relying on evidence that was not the kind "upon which reasonable persons are accustomed to rely in the conduct of serious affairs." 5 M.R.S.A. § 9057(2). As a result of this violation, Maddocks contends that he was prejudiced, and the Commission lacked substantial evidence to support its decision.

■ [¶ 12] "We will not overrule findings of fact supported by substantial evidence" and "will not disturb a decision of the Commission unless the record before the Commission compels a contrary result." *Lewiston Daily Sun v. Unemployment Ins. Comm'n*, 1999 ME 90, ¶ 7, 733 A.2d 344, 346 (quotations and citations omitted). Evidentiary matters in administrative proceedings are governed by 5 M.R.S.A. § 9057 (1989).[2] "The mere admission of incompetent evidence by an administrative agency does not relieve the party appealing from the agency's order of his burden to show prejudice resulting therefrom." *Maine Real Estate Comm'n v. Jones*, 670 A.2d 1385, 1387 (Me.1996). "Only when the agency is shown to have relied upon incompetent evidence to the prejudice of the complaining party can the admission of such evidence require reversal of the agency decision." *Id.* (quoting *In re Maine Clean Fuels, Inc.*, 310 A.2d 736, 749 (Me.1973)).

[¶ 13] The Maine Employment Security Law defines "employment" broadly as including services "performed for wages or under any contract of hire, written or oral, expressed or implied." 26 M.R.S.A. § 1043(11) (Supp.2000). Section 1043(11)(E) provides: "Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the bureau that . . ." the

---

2. 5 M.R.S.A. § 9057 provides in pertinent part:
 **2. Evidence.** Evidence shall be admitted if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs. Agencies may exclude irrelevant or unduly repetitious evidence.
 **3. Witnesses.** All witnesses shall be sworn.

three prongs of the ABC test are satisfied.[3] 26 M.R.S.A. § 1043(11)(E). Before Maddocks is required to satisfy the ABC test, however, the Bureau's burden is to establish that certain individuals performed services for Maddocks for compensation. *See id.; Nyer v. Maine Unemployment Ins. Comm'n*, 601 A.2d 626, 627 (Me.1992) ("Once triggered, the employer may rebut the presumption of employment only by proving all three prongs of what is commonly known as the 'ABC' test . . . ."). Therefore, before we consider whether Maddocks met the ABC test, we must determine whether the Bureau established that Maddocks paid individuals for services during the assessment period. *See id.*

[¶ 14] The Commission found that the Bureau met its burden by introducing reports, prepared by a Bureau employee, of compensation paid by Maddocks to certain "satellite installers" and that the Bureau employee had obtained the information in the reports from an employee of and from records of the Bureau of Taxation which information, in turn, was based on information supplied by Maddocks. Maddocks strongly objected to the admission of the reports because the Bureau employee who prepared them was not available for him to cross-examine. Instead, the Bureau introduced the documents through the unsworn testimony of Lloyd Black, the author's superior.

[¶ 15] Maddocks contends, on appeal, that the Commission erred in relying on the documents because Black, through whom the documents were introduced, had not been sworn. The APA provides that: "All witnesses shall be sworn." 5 M.R.S.A. § 9057(3). Because Maddocks failed to object to Black's unsworn testimony during the hearing, we would not generally review the issue on appeal, *New England Whitewater*, 550 A.2d at 60; however, we have held that "[w]hen a party is not aware, or is not chargeable with responsibility to be aware, of the requirement to swear witnesses, as for example when a party is not represented by counsel, the failure to make timely objection regarding such omission rarely will lead to a forfeiture by procedural default," *Sewall v. Spinney Creek Oyster Co., Inc.*, 421 A.2d 36, 39–40 (Me.1980). Thus, we will consider Maddocks's contention despite his failure to object during the hearing. *See Sewall*, 421 A.2d at 39–40.

[¶ 16] The circumstances here are distinguishable from those in *Sewall*, where we determined that the failure to swear witnesses was a fatal deficiency. *See id.* at 40. As part of the Commission's decision to admit the evidence, it stated it would "entertain the employer's request for [a] further hearing to cross-examine the preparer of the documents to which the employer objects . . . ." Maddocks chose, however, not to take advantage of this opportunity. Because the Commission's offer provides the essential fairness afforded by the APA evidentiary rules, it cured the defect created by the Commission's failure to swear Black. Therefore, Maddocks was not prejudiced by the unsworn testimony, and in these circumstances, although the Commission should have sworn Black, its failure to administer the oath was not a fatal deficiency.

[¶ 17] Maddocks also contends the documents are not "the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs" because of our decision in *Heal v. Maine Employment Sec. Comm'n*, 447 A.2d 1223 (Me.1982). In *Heal*, we found

---

3. The ABC test in 26 M.R.S.A. § 1043(11)(E) states:

(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact;
(2) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
(3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

the Commission relied on two documents to make its decision. *Id.* at 1225–26. We determined that the record did not describe "the circumstances under which the statements were obtained"; "[t]he documents on their face [did] not supply any assurance of reliability"; the documents were "a second or third-hand hearsay account of the·crucial fact in litigation"; the statements in the documents were unsworn; "the identity of the hearsay informant [was] uncertain"; and "the extent of the informant's personal knowledge [was] unknown." *Id.* at 1226. As a result, the documents were inadmissible. *Id.*

[¶ 18] In the present case, Black established a foundation for admitting the documents by describing the process and the circumstances in which the information was obtained. Moreover, Black identified himself as being in charge of field advisors and examiners, identified the person who prepared the documents, and verified that the field advisor and examiner who signed the documents was the employee who secured the information. Finally, the Commission offered Maddocks an opportunity to cross-examine the author of the documents at a subsequent hearing if Maddocks had a good faith belief that the documents were incorrect. Thus, because Black's testimony and the procedure adopted by the Commission established the reliability of the documents, we determine that the documents that the Commission relied ·on are "the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." 5 M.R.S.A. § 9057(2).

[¶ 19] Next, we consider whether the documents trigger the presumption that certain individuals performed services for Maddocks for compensation during the assessment periods. The documents establish that Maddocks paid Michael Walsh in 1994–1995[4] and other identified individuals in 1996. Other than the compensation paid to Walsh, the documents do not provide the names of the individuals who al-

legedly received indicated amounts of compensation from Maddocks during 1994 and 1995. Thus, the Bureau triggered Maddocks's obligation to rebut the presumption of employment for the 1996 assessments, but except for Walsh, the Bureau failed to trigger Maddocks's obligation to rebut the presumption of employment for the 1994 and 1995 assessments.

### III. ABC TEST

 [¶ 20] Because the Commission correctly determined that the presumption was triggered for Walsh in 1994 and 1995 and for the listed individuals in 1996, Maddocks had a burden to satisfy the ABC test for those individuals. *See Nyer,* 601 A.2d at 627. "If an employer fails to satisfy any of the three prongs of the [ABC] test, the worker is deemed an employee . . . ." *Lewiston Daily Sun,* 1999 ME 90, ¶ 11, 733 A.2d at 347. Maddocks did not· present any evidence from which the Commission could conclude that the individuals were not employees. *See Martin,* 1998 ME 271, ¶ 18, 723 A.2d at 418. As a result, the Commission did not err in finding Maddocks failed to meet his burden of establishing that he did not employ Walsh in 1994 and 1995 and the other individuals in 1996. *See id.*

The entry is:

Judgment finding Maddocks liable for the 1996 assessment affirmed; judgment finding Maddocks liable for the 1994 and 1995 assessments vacated, with the exceptions of the contributions that correspond to the wages paid to Walsh by Maddocks. Remanded to the Superior Court for remand to the Commission with instructions to calculate the 1994 and 1995 assessments based solely on the amounts Maddocks paid Walsh for his services, as established in the record of the proceeding before the Commission.

4. The record indicates that Walsh received the following compensation from Maddocks:

$1,317.50 for 1994 and $4,405 for the first quarter of 1995.