STATE OF MAINE

KNOX, ss.

STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT

APR 25 2005

RECEIVED AND FILED
Susan Guillette, Clerk

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-009

DENNIS DECHAINE, ·

Petitioner

v.

DEPARTMENT OF CORRECTIONS,

Respondent

DECISION AND ORDER

This matter is before the court on an M.R. Civ. P. 80C petition for review of final agency action.

Petitioner Dennis Dechaine (hereinafter "Petitioner" or "Dechaine") is an inmate currently housed at the Maine State Prison in Warren. On or about December 27, 2003, Dechaine attended a disciplinary board hearing to answer a charge of possession of escape tools. Petitioner pleaded no contest to this charge and received a sentence of 30 days in the prison's segregation unit. Upon his release back into the general prison population, Dechaine learned that as a further result of this conviction, certain of his "grandfathered"[1] personal property was now deemed contraband and had to be removed from the facility. These items included various stereo components, a television set, and a cable box, which are, according to the Petitioner, worth approximately $2,000.00. The petitioner filed a grievance relative to the re-classification of these items, alleging violations of the United States Constitution, State statutory

---

[1] Prison officials decided that certain personal property items purchased by inmates prior to the opening of the new state prison in Warren, but not among the items of property otherwise allowable at that facility, could be retained on a grandfathered basis. However, prison officials also determined that this privilege would be lost and such property declared contraband if, *inter alia*, the owner of such property was found guilty of a disciplinary offense.

provisions and prison policy[2]. Dechaine appeals to this Court from Department of Corrections Commissioner Martin Magnusson's "Third Level" response denying Petitioner's grievance[3].

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this Court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did". *Seider v. Board of Exam'r of Psychologists*, 2000 ME 206, ¶9, 762 A.2d 551, 555 (citing *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶6, 703 A.2d 1258, 1261). In reviewing the decisions of an administrative agency, the Court should "not attempt to second-guess the agency on matters falling within its realm of expertise" and the Court's review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record". *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). The focus on appeal is not whether the Court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence that supports the result reached by the agency. *See CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶6, 703 A.2d 1258, 1261. "Inconsistent evidence will not render an agency decision unsupported". *Seider*, 2000 ME 206, ¶ 9, 762 A.2d at 555 (citing *Bischoff v. Bd. of Trustees*, 661 A.2d 167, 170 (Me. 1990)). The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. *See Id.*

---

[2] Petitioner's original grievance made reference to the fact that he also lost his job with the Industries Department as a result of the disciplinary conviction. This issue has apparently been resolved and Dechaine addresses it only tangentially in his petition.

[3] Third Level review is the final administrative level of appeal.

Factual determinations must be sustained unless shown to be clearly erroneous. *See Imagineering,* 593 A.2d at 1053 (noting that the Court recognizes no distinction between the clearly erroneous and substantial evidence in the record standards of review for factual determinations made by administrative agencies). "A party seeking review of an agency's findings must prove they are unsupported by *any* competent evidence". *Maine Bankers Ass'n v. Bureau of Banking,* 684 A.2d 1304, 1306 (Me. 1996) (emphasis added).

"When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive on the Court, is accorded great deference and will be upheld unless the statute plainly compels a contrary result". *Id.* (citing *Centamore v. Department of Human Services,* 664 A.2d 369, 370 (Me. 1995)).

In support of his petition for review, Dechaine raises arguments based on the Federal Constitution, State statutes, and Department of Corrections (hereinafter "the DOC") policy. With regard to arguments based on the Federal Constitution, the Petitioner first cites generally to the text of the Fourth Amendment. Although Dechaine does not go into great detail, he appears to imply that allowing prisoners to buy expensive property without prior warning that it may become subject to removal from the facility results in an unreasonable seizure if and when it is declared contraband.

In its reply brief, the DOC dispenses with this argument in fairly short order by reference to the Supreme Court's decision in *Hudson v. Palmer,* 468 U.S. 517 (1984). In that case, the Court noted that the Fourth Amendment's proscription against unreasonable seizures is inapplicable in a prison setting. *See Id.* at 528, n. 9. Hence, it appears that Dechaine's Fourth Amendment argument is unavailing.

Dechaine also claims that the DOC policy requiring the removal of his grandfathered property gives rise to unlawful discrimination. Specifically, the

Petitioner believes that the equal protection clause of the Fourteenth Amendment prohibits the DOC from imposing upon owners of grandfathered property the added punishment of losing that property. This punishment is additional because it would not affect those who do not own any grandfathered property. In addition, as Dechaine sees it, prisoners who own grandfathered property and those who do not are similarly situated. Therefore, as noted by the Law Court, differential treatment of these groups is only permissible if it "rationally furthers a legitimate state purpose". *Mahaney v. State of Maine*, 610 A.2d 738, 742 (1992) (quoting *Zobel v. Williams*, 457 U.S. 55, 60 (1983)). Dechaine asserts that no DOC rule or policy mentions a legitimate reason behind the differential treatment of owners and non-owners of grandfathered property.

In response, the DOC simply states that there is nothing irrational about allowing a prisoner to retain a privilege upon the condition of good behavior. Further, the fact that it is not possible to apply this condition to an inmate who never had the privilege is inconsequential.

In this instance, the Petitioner appears to have misconstrued the proper equal protection analysis. As Dechaine would have it, the State should be required to prove a rational basis underlying its differential treatment of similarly situated individuals. To the contrary, the burden actually lies with the person challenging the state action, and *that* party "must demonstrate that no facts or circumstances can reasonably be conceived to justify the challenged distinction". *Abnaki Girl Scout Council v. State Tax Assessor*, KENSC-CV-93-99 (Me. Super. Ct., Ken. Cty., Jan. 23, 1995) (Alexander, J.) (citing *Measurex Systems, Inc. v. State Tax Assessor*, 490 A.2d 1192, 1195 (Me. 1985)). Because the Petitioner has not shown that there is no conceivable rational basis behind the practice of removing an inmate's grandfathered property from the prison upon conviction of a disciplinary offense, his equal protection challenge must fail.

The last constitutional claim raised in the Petitioner's brief is that the DOC denied Dechaine due process by not providing proper notice and a hearing regarding the re-classification and removal of his property. Dechaine first cites to *Hamill v. Bay Bridge Associates*, 1998 ME 181, 714 A.2d 829, for the proposition that where property rights are to be adjudicated, procedural due process requires notice and an opportunity to be heard. Dechaine states that he received no notice of the potential removal of his property at the time he was allowed to purchase it in the early to mid 1990's. Had he known, the Petitioner claims that he would not have invested in these items in the first place. Further, the Petitioner quotes portions of 5 M.R.S.A. § 9052(4), which details the elements of proper notice under the Maine Administrative Procedures Act (hereinafter "the APA"). In light of this statute, Dechaine contends that the various memoranda circulated among the prison population foretelling the removal of grandfathered property did not provide adequate notice.

In response, the DOC first notes that it must be afforded the flexibility to determine whether certain items of prisoner property create a danger or a management issue. If Dechaine's first argument is accepted, the DOC contends that once it allows various property items within a facility, it would effectively lose the ability to take back that decision if it is later deemed imprudent. Further, the DOC asserts that the memoranda addressed to the prison population, as well as a letter addressed specifically to Dechaine, meet constitutional requirements. Finally, the DOC notes that the statutory notice argument raised by the Petitioner should be disregarded because it was not raised at the administrative level[4].

---

[4] The DOC raises a similar objection to Dechaine's argument that grandfathered property, by definition, is exempt from new rules. Pursuant to M.R. Civ. P. 80C(d), this Court's review is limited to the record upon which the DOC's decision was based. Because there is no evidence in the record that the Petitioner presented this argument at the administrative level, it should be disregarded.

Given the broad statutory powers bestowed upon the DOC Commissioner regarding the management and control of prisoners, it seems well within the DOC's authority to determine what types of personal property are allowable within a given facility[5]. Furthermore, since the statutory notice provisions relied upon by the Petitioner are not applicable to the current situation[6], the DOC was not required to comply with these formalities.

Lastly, the Law Court has explained that "the essential requirement of due process in the administrative context is that a party be given notice and an opportunity to be heard". *Martin v. Unemployment Ins. Comm'n*, 1998 ME 271, ¶ 15, 723 A.2d 412, 417. Additionally, notice need be given at "a meaningful time in the proceedings". *Hamill*, 1998 ME 181, ¶ 5, 714 A.2d at 831 (quoting *Michaud v. Mutual Fire, Marine & Inland Ins. Co.*, 505 A.2d 786, 790 (Me. 1986) (Due process notice requirement satisfied where notice received prior to entry of final judgment)). Furthermore, the Law Court has recognized that "due process is a flexible concept calling for 'such procedural protections as the particular situation demands'". *Hopkins v. Department of Human Services*, 2002 ME 129, ¶ 18, 802 A.2d 999, 1004 (quoting *Seider v. Board of Exam'r of Psychologists*, 2000 ME 118, ¶ 19, 754 A.2d 986, 991 (2000)). Considering that notice was in fact given in advance of the disciplinary proceeding that lead to the re-classification and removal of Dechaine's property, it appears that Constitutional due process has been satisfied. Further, there is no indication that the memoranda were in any way insufficient to bring home the potential consequences of a disciplinary violation. In fact,

---

[5] *See* 34-A M.R.S.A. §§ 1402(1) & 1403(1). The word "permitted" within 34-A M.R.S.A. § 3031(7) also supports this conclusion.

[6] Insofar as the present case involves a correctional facility, 5 M.R.S.A. § 9051(1) indicates that the notice provisions cited by Dechaine are irrelevant.

as evidenced by the Warden's June 3, 2002 response letter, it appears that Dechaine in particular was well aware of the potential penalty.

In reply to Dechaine's claim that he was denied a hearing prior to the re-classification of his property, the DOC asserts that he has actually been given two hearings on the matter – the first related to the disciplinary rules infraction and the second through the grievance process. Indeed, the administrative record indicates that Dechaine did in fact appear before the disciplinary board and has otherwise been provided an opportunity, through the grievance process, to state his case. Hence, it seems that constitutional due process has been satisfied in this regard as well.

The Petitioner also argues that the reclassification and removal of his grandfathered personal property is a violation of various state statutes. Dechaine first quotes from 34-A M.R.S.A. § 1402(3)(B), which provides, in part, that inmates "retain all rights of [ordinary citizens], except those expressly... taken from them by law"[7]. The Petitioner further asserts that since there is no law allowing for punitive property seizure by the DOC, it may not lawfully remove his grandfathered property from the facility.

In its brief, the DOC points out that Dechaine omitted a crucial phrase when quoting the above statute. In fact, the second clause of this subsection should read "except those expressly *or by necessary implication* taken from them by law" (emphasis added). Hence, the DOC contends, to fully understand the scope of prisoners' rights, it is necessary to view this statute in the overall context of Title 34-A. Moreover, the DOC draws the Court's attention to 34-A M.R.S.A. § 3031(7), which states that prisoners have a right to "a reasonably secure area for the maintenance of *permitted* personal effects" (emphasis added). The DOC contends that the use of the word "permitted" in this

---

[7] As mentioned *infra*, Dechaine misquotes this statute in his brief.

statutory provision is significant in that it shows "by necessary implication" that prisoners do not retain all the rights of ordinary citizens when it comes to property that may be kept in a correctional facility.

Given the statutory authority cited by the DOC, it appears that 34-A M.R.S.A. § 1402(3)(B) does not support the Petitioner's cause. Rather, as the DOC has noted, in light of section 3031(7), it is clear that the DOC may prohibit prisoners from keeping certain items of personal property in a correctional institution without violating their individual rights. This conclusion is also well supported by logic when one considers the dangers inherent in living or working in a correctional facility. Surely, those dangers would be amplified without the authority to curtail prisoner property rights in some fashion.

Dechaine also asserts that any policy statement or other directive issued by the DOC dictating that prisoners' grandfathered property shall lose that privileged status upon conviction of a disciplinary offense must be adopted pursuant to the rulemaking provisions of the APA[8]. Although the Petitioner does not specifically address all of the relevant statutory provisions, he appears to be arguing that the DOC's grandfathering policy is a "failure to adopt a rule where the adoption of a rule is required by law", pursuant to 5 M.R.S.A. § 8058(1)[9]. Further, the Petitioner apparently believes that insofar as this policy did not comply with the rulemaking provisions of the APA, it is

---

[8] 5 M.R.S.A. §§ 8051-8064.

[9] Note that although 5 M.R.S.A. § 8058(1) contemplates judicial review of an agency rule or of an agency's failure to adopt a rule occurring in a declaratory judgment action, subsection 2 provides that judicial review may take place "in any civil or criminal proceeding". 5 M.R.S.A. § 8058(2). Although Dechaine's brief refers to the Uniform Declaratory Judgments Act, 14 M.R.S.A. § 5951 et seq., in passing, it is not mentioned at all in the petition. Nonetheless, it appears that judicial review is proper pursuant to 5 M.R.S.A. § 8058(2).

void and of no legal effect[10]. Thus, because the DOC had no legal authority to force the removal of his grandfathered property, it must be returned to him.

The DOC responds by claiming that the memoranda instituting the grandfathering policy are not rules as defined by the APA because they "[concern] only the internal management of an agency...and are not judicially enforceable". 5 M.R.S.A. § 8002(9)(B)(1). Furthermore, the DOC cites to 34-A M.R.S.A. § 1402(3)(A), which states that the Commissioner need establish only those rules that he determines "appropriate or necessary". Thus, it is within the Commissioner's discretion to decide not to adopt the grandfathering policy as a rule.

Both Dechaine and the DOC have overlooked a statutory provision that appears to bear on whether this policy must be adopted as a rule. In particular, 34-A M.R.S.A. § 3032 states that "The Commissioner *shall adopt rules* describing disciplinary offenses and punishments in facilities under the general administrative supervision of the [DOC]..." (emphasis added). This text indicates that the Legislature has curbed the Commissioner's discretion to refrain from adopting a prison policy or procedure as a rule when the subject matter involves punishment for disciplinary offenses. Furthermore, Black's Law Dictionary defines the word "punishment" as "[a] sanction – such as a fine, penalty, confinement, or loss of property, right, or privilege – assessed against a person who has violated the law". BLACK'S LAW DICTIONARY 1247 (7th ed. 1999). The portions of the grandfathering policy at issue here fit squarely within this definition[11]. The loss of the privilege[12] of retaining grandfathered property items that befalls those found guilty of disciplinary offenses is precisely the type of consequence

---

[10] *See* 5 M.R.S.A. § 8057(2).

[11] Although the prison's disciplinary policy is not technically "the law", it is analogous to the law in the present context.

[12] The record indicates that a relative outside of the prison is holding Dechaine's property. The actions of the government in this instance do not amount to a forfeiture.

that amounts to a punishment.[13]   Hence, it seems that the loss of possession of grandfathered property may not be occasioned by a disciplinary infraction absent a rule, implemented pursuant to the APA, prescribing such a penalty.  However, given the preceding discussion of the DOC's statutory authority to infringe upon prisoners' property rights, Dechaine could still be forced to give up his grandfathered property for reasons other than punishment.

Dechaine also raises several arguments based on perceived violations of DOC policy[14].  First, the Petitioner asserts that the memoranda regarding grandfathered property are an impermissible attempt to replace prison policy.  DOC Policy 1.7 provides a set of rules for the establishment of policies and procedures.  Dechaine notes that, pursuant to Policy 1.7, all policies and procedures shall be issued over the signature of the Commissioner of Corrections.  Because Warden Merrill and not the Commissioner issued all the memoranda regarding grandfathered property, the Petitioner contends that they are of no binding effect.

The DOC responds by asserting that Warden Merrill was not attempting to alter DOC policy, but rather, he was merely implementing policy that was already in existence.  In particular, the DOC notes that, besides items specifically allowed, the prison property policy lets each individual facility permit additional items of property.  Hence, because it was within the Warden's discretion to allow the grandfathered

---

[13] Note also 34-A M.R.S.A. § 3032(5):
> SPECIFIC FACILITIES.  Punishment at specific correctional facilities is governed as follows.
> A.      Punishment at all correctional facilities, except juvenile correction facilities, may consist of warnings, *loss of privileges*, restitution, labor at any lawful work, confinement to a cell, segregation or a combination of these.

(Emphasis added).  This is a clear legislative recognition of the rule-making requirement with regard to loss of privileges.

[14] In addition to the policy provisions discussed *infra*, Dechaine also mentions the DOC disciplinary and property policies (Policies 17.3 and 20.1) in his brief.  The substance of Petitioner's arguments involving these provisions has been adequately addressed in the preceding paragraphs analyzing state law and will not be restated.

property in the first place, he could set limits on its continued use and enjoyment.

Ignoring for the moment that the punitive aspects of the grandfathered property policy must be adopted as a rule, it appears that the DOC did not otherwise violate Policy 1.7. The prisoner property policy clearly allows for additional items of personal property at the facility's option and for each warden to administer such property. Thus, the Petitioner's challenge in this regard is without merit.

Finally, Dechaine argues that because the grievance review officer did not respond to his grievance until six days after the deadline set by Policy 29.1 had passed, this procedural default requires a finding in his favor.

The DOC responds simply by stating that Dechaine suffered no prejudice as a result of this delay, and is therefore not entitled to relief.

Although the Commissioner did not address this issue in the Third Level response, Warden Merrill's Second Level response notes that the delay resulted in no prejudice. The Commissioner's subsequent refusal to overturn Warden Merrill's decision implies that he agreed with this conclusion. As there is no evidence in the record indicating prejudice to the Petitioner, the Commissioner's decision should not be overturned on this basis.

However, because the Commissioner failed to adopt the punitive aspects of the grandfathered property policy in accordance with the rulemaking provisions of the APA, the Commissioner's Third Level response must be reversed[15].

---

[15] As discussed *supra*, this decision should not be construed as requiring the unconditional return of Dechaine's grandfathered property. It is within the Warden's discretion, pursuant to the prisoner property policy, to discontinue the use and enjoyment of additional personal property, such as the grandfathered items at issue. The DOC should be advised, however, that unless and until the punitive measures taken against the Petitioner are adopted as a rule in accordance with the APA, inmates cannot be deprived of their grandfathered property *as a means of punishment*.

The entry will be:

The decision of the Commissioner of the Department of Corrections in the manner of a Third Level Response to Grievance of Dennis Dechaine, Maine State Prison-Warren dated May 13, 2003 is REVERSED; case remanded to the Department of Corrections for proceedings in accordance with this decision.

Dated: April 21 , 2005

Donald H. Marden
Justice, Superior Court

Date Filed __6/11/03__  __Knox__  Docket No. __AP-03-009__

County

**9/22/03 JUSTICE ATWOOD, RECUSES**

Action __80C   Appeal__

DEPARTMENT OF CORRECTIONS
MARTIN MAGNUSSON, COMMISSIONER
JEFFREY MERRILL, MSP WARDEN, and
vs. STEVE ROWE, ATTORNEY GENERAL

DENNIS DECHAINE

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Pro Se<br>Maine State Prison<br>807 Cushing Rd<br>Warren ME    04864 | Diane Sleek, Esq.<br>Assistant Attorney General<br>6 State House Station<br>Augusta ME   04333<br>626-8800 |

| Date of Entry | |
|---|---|
| 6/11/03 | 80 C Appeal filed. $100 filing fee paid. |
| 8/12/03 | On 7/10/03, Certified copy of the the complete record filed by AAG Sleek. |
| 8/12/03 | On 7/16/03, Motion for Enlargement of Agency Record filed by Dennis Dechaine. |
| 8/12/03 | On 8/5/03, Opposition to Motion for Enlargement of Agency Record field by AAG Sleek. |
| 8/12/03 | Response to Opposition to Motion for Enlargement of Agency Record filed by Dennis Dechaine. |
| 8/13/03 | Order (Notice and Briefing Schedule) filed:<br>An appeal has been filed. Pursuant to Maine Rules of Civil Procedure, the briefing schedule for the appeal is as follows:<br>1. The petitioner's brief is due 40 days after the date of this order.(The court is not using the date on which the state agency record was filed becaus that record was not immediately noticed with it was received.)<br>2. The respondent's brief is due 30 days after service of the brief by the petitioner.<br>3. The petitioner has 14 days after service of the brief by the respondent to file a reply brief.<br>Dated: 8/13/03<br>Studstrup, J.<br>Copy mailed to Dennis Dechaine and AAG Sleek. |
| 9/22/03 | Hon. John R. Atwood orally recuses himself in this matter. |
| 4/6/04 | Hearing on Plaintiff Motion to Enlarge Agency Record scheduled for 5/7/04 at 9:00 a.m.<br>Notice mailed to Dennis Dechiane and AAG Sleek. |
| 5/7/04 | Dennis Dechaine appears Pro Se; AAG Sleek for the Defendant present in Court.<br>Hon. William Brodrick presiding.<br>    Philip Galucki - Court Reporter |