| STATE OF MAINE | | SUPERIOR COURT |
| PENOBSCOT, ss | | CIVIL ACTION |
| | | DOCKET NO. AP-2003-025 |

MICHAEL A. CONNOLLY )

        Petitioner )

)

v. )     **DECISION AND**

)     **ORDER**

MAINE UNEMPLOYMENT )
INSURANCE COMMISSION )

and )

)

ALLIANCE CONSTRUCTION, INC., )

        Respondents )

**FILED & ENTERED
SUPERIOR COURT**

**AUG 3 0 2004**

**PENOBSCOT COUNTY**

SEP 13 2004

    This matter is before the Court on appeal pursuant to 5 M.R.S.A. §§11001-11008 (Supp. 2003) and Rule 80C of the Maine Rules of Civil Procedure from a decision of the Maine Unemployment Insurance Commission ("**Commission**"), in which the Commission held that Michael A. Connolly ("**Claimant**") was ineligible for unemployment insurance benefits and affirmed a Administrative Hearing Officer's decision to set aside a prior Deputy's decision awarding the Claimant benefits. The Claimant filed this appeal. This issue before the Court is whether there is sufficient evidence in the record to support the Commission's determination that the Claimant was discharged for misconduct within the meaning of 26 M.R.S.A. § 1193(2) and § 1043(23).

## Background

    On October 28, 2002, the Claimant began employment with Alliance Construction, Inc. ("**Alliance**") as a construction superintendent to oversee the construction of a Dunkin Donuts in Farmington, Maine. (R. at 184). The Claimant received a B.S. in construction management technology from the University of Maine in 2002. (R. at 211). Gary Guerette was Alliance's vice-president in charge of design/build projects. (R. at 112). Mr. Guerette was assigned to be the project manager for the

1

Farmington job. (Id.) Mr. Guerette was a licensed engineer with many years of construction experience, including cold-weather construction. (R. at 121, 226).

A project schedule dated November 5, 2002 stated that the concrete slab that would form the floor of the building would be poured after the building was framed. (R. at 111). Alliance preferred to pour the concrete slab floor after a building had been framed in order to ensure warmer and more uniform temperatures for curing. (R. at 113, 115). Concrete cured at lower temperatures is more prone to cracking and can be unsafe. (R. at 121). The cost to replace a cracked slab can range from $6000 to $7000. (R. at 109, 121, 194). Further, cold weather curing can warp a four inch slab, the size planned for this job. (R. at 126-27).

The Claimant, after some discussion with a subcontractor, Mark Lessard of Maple Leaf Construction, had some safety concerns. The Claimant was concerned that erecting the exterior frame before pouring the interior concrete slab would be structurally unsafe. (R. at 89). The Claimant and Mr. Guerette had several conversations concerning this issue. Mr. Guerette told the Claimant that it may be possible to pour the slab first, if the weather permitted it. Id. On November 24, 2002, the Claimant and Mr. Guerette spoke by telephone. The Claimant informed Mr. Guerette that he wanted to pour the concrete before the exterior frame was erected. Mr. Guerette drove to the work site. Once there, he spoke with the Claimant and the subcontractor. The Commission found that that Mr. Lessard admitted that his concern was based more on issues of profitability and efficiency than safety.[1] (R. at 10). After this conversation, Mr. Guerette ordered the Claimant to proceed with the project as scheduled and the Claimant refused to do so

---

[1] The Claimant does not dispute this fact in his brief.

2

without a written order. (R. at 98-99). Mr. Guerette then terminated the Claimant (R. at 197).[2]

The Claimant applied for unemployment benefits and the Deputy found the Claimant to be eligible. (R. at 209). Alliance appealed to the Division of Administrative Hearings and the Administrative Hearing Officer issued a decision finding that the Claimant was discharged for misconduct within the meaning of 26 M.R.S.A. §1193(2) and § 1043(23). (R. 184-89). The Administrative Hearing Officer also found an overpayment in benefits. Id. The Claimant then appealed this decision to the Commission. (R. at 183). After holding another hearing,[3] the Commission affirmed the decision of the Administrative Hearing Officer. (R. at 10-16). The Claimant filed a request for reconsideration on July 10, 2003 and the Commission denied the request on July 30, 2003. (R. at 2-3, 8-9). This appeal followed.

## Discussion

### A. Standard of Review

The Court's review of the Commission's determination is very limited. The Commission's rulings may be reversed or modified on appeal only if the Court determines that they are unsupported by substantial evidence on the whole record, were affected by error of law or were "arbitrary or capricious as characterized by abuse of discretion." 5 M.R.S.A § 11007(4)(C)(4)(5)(6). Accordingly, the Law Court has held that when the Superior Court reviews a decision of the Commission, it must determine if the Commission "correctly applied the law and whether its fact findings are supported by

---

[2] Mr. Guerette also claimed that the Claimant accused him of "doing something unsafe, unethical, and possibly illegal." (R. at 238).

[3] This hearing was held de novo, as the tape from the first meeting was lost. (R. at 155).

3

any competent evidence." Maddocks v. Unemployment Ins. Comm'n, 2001 ME 60, ¶ 7, 768 A.2d 1023, 1025 (quoting McPherson Timberlands, Inc. v. Unemployment Ins. Comm'n, 1998 ME 177, ¶ 6, 714 A.2d 818, 820). The Court "will not disturb a decision of the Commission unless the record before the Commission compels a contrary result." McPherson Timberlands, Inc., 1998 ME 177, ¶ 6, 714 A.2d at 820; Lewiston Daily Sun v. Unemployment Ins. Comm'n, 1999 ME 90, ¶ 7, 733 A.2d 344, 346. The Court may not substitute its judgment for that of the agency merely because the evidence could give rise to more than one result. Dodd v. Sec'y of State, 526 A.2d 583, 584 (Me. 1987). "The burden of proof clearly rests with the party seeking to overturn the decision of an administrative agency." Seven Islands Land Co. v. Maine Land Use Regulation Comm'n, 450 A.2d 475, 479 (Me. 1982). In cases where conflicting evidence is presented, the Law Court has repeatedly held that such conflicts are for the fact finder to resolve. Bean v. Maine Unemployment Ins. Comm'n, 485 A.2d 630, 634 (Me. 1984). Issues of credibility belong to the Commission. Nisson v. Maine Unemployment Sec. Comm'n, 455 A.2d, 945, 949 (Me. 1983).

**B. Applicable Law.**

*1.     Maine's Unemployment Security Law and "Misconduct"*

Employees shall be disqualified for unemployment benefits if they have been discharged for "misconduct." 26 M.R.S.A. 1193(2). 26 M.R.S.A. § 1043(23) defines misconduct as, "a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer." Acts of "[i]nsubordination or refusal without good cause to follow reasonable or proper instructions from the employer;" are presumed to

4

"manifest a disregard for a material interest of the employer," Id. at § 1043(23)(A)(9). If "a culpable breach or a pattern of irresponsible behavior is shown," these actions or omissions constitute 'misconduct.'" Id. at § 1043(23)(A). Whether an employee's behavior was culpable is an issue of fault and the Law Court has provided some guidance:

> [T]he Commission examines the employee's behavior as the *objective* manifestation of intent. It is not an essential element of misconduct, as defined in the statute, that the employee have actual subjective intent to disregard the employer's interests. It is sufficient if the Commission justifiably determines that the employee's conduct was of a type, degree, or frequency that was so violative of employer interests that it may reasonably be deemed tantamount to an intentional disregard of those interests.

Sheink v. Maine Department of Manpower Affairs, 423 A.2d 519, 522 (Me. 1980). Reasonableness, too, is an objective standard determined by the circumstances of the case. Wellby Super Drug Stores, Inc. v. Unemployment Ins. Comm'n., 603 A.2d 476, 479 (Me. 1992) (citations omitted).

The statute does provide the Claimant a possible defense. A finding of misconduct cannot based solely on an "isolated error in judgment or a failure to perform satisfactorily when the employee has made a good faith effort to perform the duties assigned;". 26 M.R.S.A. § 1043(23)(B)(1). Finally, an employer is not necessarily required to give an employee a warning. Thompson v. Maine Unemployment Ins. Comm'n, 490 A.2d 219, 223 (Me. 1985). Essentially, this Court must decide whether the

Commission properly found, as a matter of law, that (1) Mr. Guerette's instructions, were proper and reasonable, (2) the Claimant's refusal to proceed without written instructions were without good cause and (3) the Claimant's behavior constituted a culpable breach or a pattern of irresponsible behavior.

2.    *Reasonableness of Mr. Guerette*

Alliance had to prove that Mr. Guerette's instructions were proper and reasonable before the Commission could have presumed that the Claimant disregarded a material interest of the employer. 26 M.R.S.A. 1043(23)(A). See also Sprague Electric Co. v. Maine Unemployment Ins. Comm'n, 526 A.2d 618, 619 (Me. 1988) (employer bears the burden of proving that the employee engaged in misconduct). The Commission found that the Claimant had received a construction schedule on or about November 5, 2002. (R. at 10). This schedule included the timing for the pouring of the concrete floor slab. (R. at 10-11). The Commission also determined that Alliance's decision to erect the exterior frame prior to the pouring of the concrete floor slab was based on legitimate concerns of the problems associated with cold weather curing. (R. at 13). This finding was based on "voluminous" evidence in the record regarding safe temperatures for pouring concrete. (R. at 14). Finally, the Commission found that Mr. Guerette's final order to proceed with the pouring as scheduled on November 24, 2002 was reasonable. It is undisputed that the subcontractor, Mr. Lessard, informed Mr. Guerette that his concerns were based on efficiency and expense, not safety. (R. at 14). Finally, the Commission pointed to Mr. Guerette's "30 years of construction experience n Maine." (R. at 14). After an examination of the record, this Court finds that the Commission had more than enough evidence to find that Mr. Guerette acted reasonably under the

circumstances when he ordered the Claimant to pour the concrete slab floor on November 24, 2002.

   3.   *Good Cause for the Claimant's Conduct*

In order to establish a presumption that the Claimant's behavior constituted a disregard for a material interest, Alliance also had to prove that the Claimant did not have good cause to refuse to follow Mr. Guerette's instructions without a written declaration. 26 M.R.S.A. § 1043(23)(A)(9). The Commission found that the Claimant and Mr. Guerette had spoken about the possibility of pouring the concrete slab floor before erecting the exterior frame. (R. at 11). The Commission also found that the Claimant refused, absent a written decree, to proceed with the project as scheduled. The Commission noted that the Claimant did not provide evidence at the hearing to prove that pouring the concrete slab floor before erecting an exterior frame was unsafe. The Commission further found that the Claimant refused to yield to Mr. Guerette's instructions after Mr. Guerette spoke with Mr. Lessard about safety issues. "[Mr. Guerette's] decision was based upon 30 years of construction experience in Maine. The claimant, though experienced in the construction industry, was one year removed from a construction management degree and was performing the job of project supervisor for the first time." (R. at 14). In other words, given the absence of a legitimate safety concern, the decision of how to proceed was the employer's and the failure of the Claimant to comply with that decision was a breach of his obligation to Alliance. The Commission found that the Claimant's refusal follow instructions without a written decree was without good cause and, therefore, constituted a disregard of a material interest of Alliance. An examination of the record reveals that there was more than enough evidence to support

this conclusion. The conversation between Mr. Guerette and Mr. Lessard, the experience levels between the Claimant and Mr. Guerette and the Claimant's refusal to proceed without a written decree are all undisputed.[4]

Additionally, the Commission addressed the Claimant's possible defense under 26 M.R.S.A. § 1043(23)(B)(1). The Claimant could have argued that this incident was an "isolated error of judgment or a failure to perform satisfactorily when [he] made a good faith effort to perform the duties assigned." The Commission concluded that the Claimant did not make a good faith effort, as he simply refused to proceed. The Commission did not go into much further depth on this point, but as the Claimant never raised this defense, the Commission acted appropriately. The Court's examination of the record reveals that the Commission finding was based on substantial evidence in the record. The Claimant argues that he was acting in good faith, because he had genuinely concerned about he safety of his workers. However, the Claimant's acts must be examined objectively. Sheink, at 423 A.2d at 522. In light of the fact that Mr. Lessard retracted his safety concerns and the superior experience of Mr. Guerette, the Commission had a proper basis to find that the Claimant did not have good cause to demand a written decree before proceeding.[5]

4.    *The Claimant's Culpable Breach or Pattern of Irresponsible Behavior*

In order for behavior under § 23(A)(9) to constitute "misconduct" under the statute, Alliance also had to prove that the Claimant's behavior constituted a culpable breach or pattern of irresponsible behavior. It is conceded by all parties that there was no

---

[4] While the Claimant argues that he may have proceeded with the construction of he had received a written decree, it is undisputed that he refused to proceed without one.

[5] This Court notes that the Claimant had concerned about OSHA standards and personal liability. However, in light of the above facts, the Claimant's did not have good cause to refuse to proceed without a written decree, in addition to the written construction schedule of November 5, 2002.

"pattern of irresponsible behavior" on the part of the Claimant.[6] The issue, is whether the Commission properly found that the Claimant's behavior was a "culpable breach." The Commission found that the Claimant's refusal to comply with the construction schedule constituted a "culpable breach. (R. at 13). "In refusing to comply with the provisions of the construction schedule, absent a compelling rational for doing so, the claimant breached his duty to the employer." (R. at 14). The Commission then went on to point out that the Claimant's rationale was not compelling as the facts of the case show that his concerns were unsupported by the evidence and the surrounding circumstances as noted above. The Commission also noted that the Claimant's refusal to proceed forced a suspension of construction and risked the possible expense of removing and replacing an improperly cured concrete slab. A review of the record reveals that the Commission properly relied on the evidence to reach this conclusion. While the Claimant may have, subjectively, had a good faith reason to be concerned, the objective standard that must be used reveals that the Commission had ample evidence to find that the Claimant's behavior, objectively, amounted to a culpable breach. This finding, coupled with the presumption that the Claimant's behavior constituted a disregard for a material interest of Alliance, meant that the Claimant's behavior amounted to "misconduct" as a matter of law. The Commission was correct in so concluding.

5.    *Other Issues*

The Claimant also alleges that Mr. Guerette attempted to "defraud" Alliance's worker's compensation insurance carrier and ordered him to pump water into a nearby catch basin in breach of a contract. He also points to various alleged contradictions on

---

[6] Thus the Claimant's argument that the conflict was "an isolated incident" is immaterial.

9

the part of Mr. Guerette. While these issues may cast doubt on the credibility of Mr. Guerette, the issue of credibility belongs to the Commission and is beyond the review of this Court. Nisson v. Maine Unemployment Sec. Comm'n, 455 A.2d, 945, 949 (Me. 1983). Finally, the Claimant has introduced new evidence before this Court in violation of M.R. Civ. P. 80C(e). Thus, this Court must disregard the new evidence.

## CONCLUSION

For the foregoing reasons, the Court affirms the Commission's decision that the Claimant was discharged for conduct within the meaning of 26 M.R.S.A. § 1043(23)(A)(9). Accordingly, the entry is:

Decision of the Maine Unemployment Insurance Commission **AFFIRMED**.

The Clerk may incorporate this Decision and Order into the docket by reference.

DATED: Aug. 30, 2004

_____
Justice, Maine Superior Court

Date Filed __8/28/03__     PENOBSCOT     Docket No. __AP-2003-25__

County

Action __80C APPEAL__

**ASSIGNED TO JUSTICE JEFFREY L. HJELM - RECUSED**

**REASSIGNED TO JUSTICE ANDREW M. MEAD**

MICHAEL A. CONNOLLY                    VS.   ALLIANCE CONSTRUCTION, INC.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| MICHAEL A. CONNOLLY, Pro se | DAVID BENEMAN, ESQ. |
| ~~11 FOUNDERS PLACE #2F~~ | LEVENSON, VICKERSON & BENEMAN |
| ~~ORONO, ME. 04473~~ | P O BOX 465 |
| 135 Mayo Road, Apt. E | PORTLAND ME   04112-0465 |
| Hampden, Maine   04444 | |

OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA, ME.   04333-0006
BY:    PAMELA W. WAITE, AAG
FOR:   ME. UNEMPLOYMENT INS. COMMISSION

| Date of Entry | |
|---|---|
| 8/28/03 | 80C Appeal filed. |
| 8/28/03 | Application of Plaintiff to Proceed Without Payment of Fees M.R.Civ.p. 91 together with Indigency Affidavit (attachment attached) filed. |
| 8/29/03 | Order on Plaintiff's Application to Proceed Without Payment of Fees M.R.Civ.P. 91 filed.  The filing fee is waived.  This order is incorporated into the docket by reference at the specific direction of the court. (Mead, J.)  Copy forwarded to Plaintiff Pro se. |
| 9/2/03 | Notice of Assigned Justice filed.  Pursuant to Administrative Order, Single Justice Assignment of Civil Cases, Docket No. SJC-323, the above referenced case is specially assigned to Justice Jeffrey L. Hjelm.   /s/ Margaret Gardne Clerk   Copy forwarded to Plaintiff and to Defendant. |
| 9/5/03 | Entry of Appearance filed by David Beneman, Esq. on behalf of Alliance Construction Inc.    Copy of Notice of Assigned Justice forwarded to attorney for Respondent. |
| 9/12/03 | Letter received by Elizabeth J. Wyman, AAG, entering her appearance on behalf of the Maine Unemployment Insurance Commission. |
| 10/14/2003 | Administrative Record filed by Elizabeth J. Wyman, Assistant Attorney General. |
| 10/14/2003 | Notice and Briefing Schedule forwarded to Plaintiff Pro Se and all attorneys of record. |
| 11/12/03 | Motion for Continuance filed by Plaintiff Pro se. |
| 11/14/03 | Defendant Alliance Construction's Response to Plaintiff's Motion for Continuance filed. |
| 11/14/03 | Certificate of Service filed by Defendant Alliance Construction, Inc. as to their Response to Plaintiff's Motion for Continuance. |